**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA**

ELECTRONICALLY
FILED
08/01/2026
U.S. DISTRICT COURT
Northern District of WV

**KRISTIN DEVAUL,**

     **Plaintiff,**

**v.**

                                         **Civil Action No.:** <u>1:26-CV-93</u>
                                            **Judge:** <u>Kleeh</u>

**THE MARION COUNTY BOARD OF EDUCATION;**

**DONNA COSTELLO, in her individual and official
capacity as a member of the Marion County Board
of Education;**

**KEVIN ROGERS, in his individual
and official capacity as a member of the Marion
County Board of Education; and**

**JAMES SAUNDERS, in his individual and official capacity
as a member of the Marion County Board of
Education,**

     **Defendants.**

---

**COMPLAINT**

COMES NOW the Plaintiff, Kristin DeVaul, by counsel, Ryan J. Umina, Esq., and the law firm of Umina Legal, PLLC, and for her Complaint against the above-named Defendants, states as follows:

**INTRODUCTION**

This action arises from a sustained, sex-based campaign waged against Kristin DeVaul, the Marion County Board of Education's Administrative Assistant of Human Resources, by three members of that Board — Defendants Donna Costello, Kevin Rogers, and James Saunders — who seized upon and spread a false accusation that eighteen years of Ms. DeVaul's professional

standing were earned through an intimate relationship with the Superintendent of Schools, Dr. Donna Heston, rather than through her work.

That accusation was false, but its truth is immaterial. Acting on it, the three Board members propelled false rumors about Ms. DeVaul's private life, surveilled her social media, confined her to her office, barred the professional travel her position requires, paid her less than male employees with equal or lesser credentials, and — after she asserted her rights — kept every restriction in place while the rumor they refused to correct was repeated by the Board's own President as recently as July 2026.

The discrimination is established not principally by Ms. DeVaul's word, but by the Board members' own recorded statements, the written statement of a sitting Board member, and the Board's own public records. Ms. DeVaul brings this action under Title VII of the Civil Rights Act of 1964, the Fourteenth Amendment to the United States Constitution as enforced through 42 U.S.C. § 1983, and the West Virginia Human Rights Act, to redress the violation of her rights and to recover the damages she has suffered.

### JURISDICTION AND VENUE

1. Jurisdiction is conferred upon this Honorable Court pursuant to 28 U.S.C. §§ 1331, 1343, and 1367, as this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1983, and as this Court has supplemental jurisdiction over the related claims arising under the West Virginia Human Rights Act, W. Va. Code § 16B-17-1 *et seq*. (recodified from W. Va. Code § 5-11-1 et seq. effective February 8, 2024).

2. Plaintiff has satisfied all administrative prerequisites to suit under Title VII.

3. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission, dual-filed with the West Virginia Human Rights Commission and designated EEOC Charge No. 533-2026-01804, alleging sex discrimination including

discrimination based on perceived sexual orientation, unequal compensation, hostile work environment, and retaliation.

4.      On May 5, 2026, the United States Department of Justice, Civil Rights Division, issued Plaintiff a Notice of Right to Sue. See Notice of Right to Sue (Attached hereto as "Ex. 1").

5.      This Complaint is filed within ninety (90) days of Plaintiff's receipt of that Notice.

6.      Venue is proper before this Honorable Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as the Defendant Board resides in this District, the relevant employment records are maintained in this District, and the unlawful employment practices complained of were committed in Marion County, which lies within the Clarksburg Division of the Northern District of West Virginia.

**PARTIES**

7.      Plaintiff Kristin DeVaul is a resident of Marion County, West Virginia.

8.      Ms. DeVaul has served the Marion County school system for eighteen years.

9.      Ms. DeVaul serves as the County's Administrative Assistant of Human Resources and works at the Board's central office.

10.      Ms. DeVaul is an aunt to nieces and nephews enrolled in the county's schools.

11.      Defendant Marion County Board of Education is a public body corporate and a political subdivision of the State of West Virginia, organized and existing under the laws of the State of West Virginia, with its principal offices at 1516 Mary Lou Retton Drive, Fairmont, West Virginia 26554 (the "Board").

12.      The Board is an employer within the meaning of Title VII and the West Virginia Human Rights Act, and at all times relevant herein employed Ms. DeVaul.

3

13.    The Board holds final policymaking authority over the employment, compensation, and working conditions of its personnel, including Ms. DeVaul.

14.    The votes and directives of the Board's members constituted official acts of the Board's final policymaking authority over the personnel matters at issue.

15.    Defendant Donna Costello is and was at all times relevant herein an elected member of the Board, sued in her individual and official capacities ("Defendant Costello").

16.    Defendant Costello has served in leadership roles on the Board, including as its President.

17.    At all times relevant herein, Defendant Costello acted under color of state law.

18.    Defendant Kevin Rogers is and was at all times relevant herein an elected member of the Board, sued in his individual and official capacities ("Defendant Rogers").

19.    At all times relevant herein, Defendant Rogers acted under color of state law.

20.    Defendant James Saunders is and was at all times relevant herein an elected member of the Board, sued in his individual and official capacities ("Defendant Saunders").

21.    Since July 6, 2026, Defendant Saunders has served as President of the Board.

22.    At all times relevant herein, Defendant Saunders acted under color of state law.

23.    Defendants Costello, Rogers, and Saunders are referred to collectively herein as the "Individual Defendants."

## FACTS

### MS. DEVAUL, DR. HESTON, AND A FABRICATED RELATIONSHIP THREE BOARD MEMBERS WOULD NOT LEAVE ALONE

24.    Ms. DeVaul earned her position through eighteen years of service to the Marion County school system.

4

25.     Dr. Donna Heston has served as Superintendent of Marion County Schools since July 1, 2021, and Ms. DeVaul's duties require regular professional contact with the Superintendent's office.

26.     Beginning no later than early 2023, the Individual Defendants seized upon, and began advancing, the accusation that Ms. DeVaul and Dr. Heston were engaged in an intimate, same-sex relationship.

27.     That accusation was and is false.

28.     Acting upon that accusation, the Individual Defendants subjected Ms. DeVaul to a sustained campaign of sex-based harassment, surveillance, interrogation, physical confinement, denial of professional travel, and suppressed compensation, and — upon her assertion of her rights — retaliation.

29.     The campaign described herein is documented by the Individual Defendants' own recorded words, by the written statement of a sitting Board member, and by the Board's certified public records.

**THE HARNED ALLEGATIONS AND THE BOARD'S ADOPTION BY SILENCE**

30.     On or about January 29, 2023, Ian Harned, an Assistant Principal then subject to pending disciplinary action, sent an email directly to the members of the Board falsely alleging that Ms. DeVaul had solicited him for a sexual "threesome" — a fabrication that, by its nature, implicated both Ms. DeVaul and Dr. Heston — and had promised him a principal's position in exchange (the "Harned Allegations").

31.     The Harned Allegations were fabricated in their entirety.

32.     From their inception, the Harned Allegations sexualized the professional relationship between the two women and targeted them together.

33.     Ms. DeVaul immediately retained counsel, who, on February 9, 2023, issued a written response copied to the Board members characterizing the Harned Allegations as vexatious and salacious and warning of legal exposure for defamation.

34.     Although the Board members received both the fabricated allegations and counsel's written warning, no Individual Defendant took any corrective action, made any inquiry of Ms. DeVaul, or repudiated the fabrication.

35.     Instead, the Individual Defendants adopted the fabrication's premise as their own and made it the organizing theory of their treatment of Ms. DeVaul for the next three and a half years.

### DEFENDANT COSTELLO'S RECORDED INTERROGATIONS OF THE SUPERINTENDENT ABOUT MS. DEVAUL

36.     In a recorded conversation from approximately March 1, 2023, Defendant Costello raised with the Superintendent what she described as "nasty rumors" about Dr. Heston and Ms. DeVaul.

37.     The rumors were not an aside; they were the subject of the conversation, and Defendant Costello returned to them repeatedly.

38.     In the same conversation, Defendant Costello admitted: "The good old boy network still exists. It's just taken on a different face."

39.     In the same conversation, a male administrator's habit of making extended personal telephone calls in the school parking lot during work hours was treated as harmless, and no Board member ever questioned his professionalism, restricted his movements, or monitored his whereabouts.

40.     Ten months later, Defendant Costello returned to the subject — this time announcing that it was not a debate.

6

41.    On or about January 29, 2024 — one year to the day after the Harned email — Defendant Costello convened a private meeting with the Superintendent and, after approximately eight minutes of routine county business, stated: "Dr. Donna, I told you that we needed to have a conversation and this, it's not a debate."

42.    There followed an interrogation of the Superintendent by Defendant Costello, lasting approximately twenty-five minutes, concerning a perceived sexual relationship with Ms. DeVaul.

43.    Defendant Costello admitted on the recording that she had raised the subject a year earlier, telling the Superintendent: "I had come to you in regard to those insinuations and rumors and innuendos a year ago and those have not died down."

44.    Defendant Costello tied Ms. DeVaul's professional appointment directly to the fabricated relationship, stating: "I don't think you cannot know that when you appointed Kristin DeVaul or recommended Kristin for that position . . . I think that's when shit hit the fan."

45.    The premise of the interrogation — that a woman's professional advancement is explained by a sexual relationship rather than by her qualifications — is itself a stereotype about women.

46.    The premise was also false, and it was corrected on the recording: Dr. Heston was not on the committee that hired Ms. DeVaul, did not recommend her, and had nothing to do with that committee's selection of Ms. DeVaul for the supervisor's position.

47.    Ms. DeVaul's selection for her position was the merit-based decision of a hiring committee.

48.    Defendant Costello did not acknowledge the correction and continued to press the subject of the fabricated relationship.

49.     When the Superintendent protested that the rumors were defamatory, Defendant Costello instructed her to "set the affair aside."

50.     Defendant Costello stated, as to the fabricated affair, "personally, I don't care," treating the defamatory false accusation about Ms. DeVaul as established fact.

51.     The Superintendent confronted Defendant Costello with comparators — male administrators who socialized, traveled, and stayed overnight together and were never suspected of an improper relationship, and a female supervisor and subordinate whose relationship was closer than anything between Dr. Heston and Ms. DeVaul and who were never accused.

52.     When asked whether the male administrators were sleeping together, Defendant Costello answered, "Well, that's not my business."

53.     Near the end of the same recording, Defendant Costello told the Superintendent to "put your big girl panties on," and conceded, when confronted with the male administrators' identical relationships: "Well, I know it's a good old boy network and it still exists."

54.     The perceived sexual orientation of the male administrators was not the Board's concern, while that of the two women was.

55.     Ms. DeVaul was thus the subject of recorded interrogations of her own superior about her private life — in March 2023 and again in January 2024 — an experience no male employee of the district has ever undergone.

**THE CONCEALED NORTH MARION
MEETING AND THE SURVEILLANCE OF MS. DEVAUL**

56.     In or about July 2025, Defendants Costello and Rogers traveled together to North Marion High School and met privately, for approximately ninety-eight minutes, with Jared Mileto, an assistant principal at the school, in a meeting concealed from the Superintendent and captured on a recording (the "North Marion Meeting").

57. The North Marion Meeting was concealed from Ms. DeVaul, whose private life and personnel standing were among its subjects.

58. During the North Marion Meeting, the participants discussed Ms. DeVaul's personal life and the fabricated relationship.

59. Mr. Mileto acknowledged during the meeting that Ms. DeVaul was better qualified than he for the position she held, conceding that she "had a better resume."

60. The social-media surveillance discussed and reflected in the North Marion Meeting was applied exclusively to the two women.

61. No Board member has ever surveilled, compiled, or discussed the social-media activity of any male employee of the district as evidence of a rumored sexual relationship.

62. Defendant Costello, acknowledging in real time that the participants knew such statements were improper, stated: "We're not supposed to say stuff."

63. Over the course of three and a half years, the false rumor of an intimate relationship between Ms. DeVaul and the Superintendent spread through the district's schools and the Marion County community.

64. The rumor reached Ms. DeVaul's own colleagues, and Ms. DeVaul has been made to answer, in her workplace and in her community, for a fabricated account of her own private life.

65. The Individual Defendants — the very officials responsible for the district's governance — propelled and advanced the rumor rather than taking any action to correct it.

66. At no time did any Individual Defendant take any corrective action to address the harassment Ms. DeVaul was suffering.

**THE EXECUTIVE-SESSION CONFINEMENT OF MS. DEVAUL**

67.    In August 2025, during an executive session regarding Ms. DeVaul at which all Board members and the Superintendent were present, Defendants Saunders and Costello directed that Ms. DeVaul could not leave her office during the workday, could not travel with the Superintendent to professional meetings, and could not visit the schools she was hired to serve (the "August 2025 Directives").

68.    The August 2025 Directives were issued in Ms. DeVaul's absence, without notice to her, without any charge against her, and without any opportunity to be heard.

69.    The Superintendent objected to the August 2025 Directives as discriminatory.

70.    No comparable directive was ever issued to any male employee of the district.

71.    The restrictions on Ms. DeVaul remained in effect.

72.    The August 2025 Directives physically confined a senior human-resources administrator to her office and severed her from the schools and personnel her position exists to serve.

73.    On December 16, 2025, Defendant Saunders again confronted the Superintendent in executive session, questioning why Ms. DeVaul had attended a West Virginia Association of School Administrators conference in Wheeling and again directing restrictions on her professional travel.

74.    Defendant Saunders himself regularly attends social and professional events in the company of male employees of the district, including one male employee in particular, without objection from any member of the Board.

75.    In 2026, as a result of Defendants' conduct, directives, and restrictions, Ms. DeVaul has not traveled professionally at all.

76.     Male county-office administrators routinely received Board approval for professional travel, including overnight and out-of-state travel, throughout the same period.

77.     A written statement of a sitting Board member, handwritten and hand-delivered, records that Defendant Saunders "does not seem to care that male administrators attend meetings together," that all Board members and the Superintendent were present when the restrictions were directed, and that "[t]his was not the first time he has done this."

### PAY SUPPRESSION RELATIVE TO MALE COMPARATORS

78.     Ms. DeVaul holds Position Code 104 and serves at the Board's central office.

79.     Ms. DeVaul is paid less than male colleagues with equal or inferior credentials, as reflected in the certified payroll records maintained by the Board.

80.     A male employee of the Board who holds Position Code 108, with a lower credential and fewer years of experience than Ms. DeVaul ("Male Employee No. 1"), is paid $111,350.19 annually — $6,537 more than Ms. DeVaul.

81.     A second male employee, who holds the identical position code (Code 104) and credential as Ms. DeVaul and serves at the same central office ("Male Employee No. 2"), is paid $118,769.36.

82.     While a portion of the gap with Male Employee No. 2 reflects additional years of service, the Board's disparate treatment of the two Code-104 administrators is stark.

83.     The Board has never confined Male Employee No. 2 to his office, surveilled his social media, or questioned his personal relationships — including his regular public socializing with Defendant Saunders, the very member who directed Ms. DeVaul's confinement, and his travel with other male county-office administrators, including overnight travel, and his public socializing with them in personal and professional capacities.

84.     The differentiating factor between Ms. DeVaul and Male Employees No. 1 and No. 2 is sex.

85.     The Board has never remedied the disparity.

## THE CAMPAIGN BECOMES PUBLIC AND THE HARM SPREADS

86.     In February and March 2026, the Individual Defendants' campaign against the Superintendent — driven by the same fabricated relationship — became the subject of extensive public controversy and press coverage in Marion County.

87.     That public controversy placed the fabricated relationship, and with it Ms. DeVaul's name and reputation, before the public.

88.     Ms. DeVaul has suffered reputational harm in the small community in which she lives and works, and throughout the State, impairing her future employment opportunities and her career.

## MS. DEVAUL ASSERTS HER RIGHTS AND THE CONDUCT CONTINUES

89.     Ms. DeVaul asserted her rights, including through counsel's February 9, 2023 written opposition to the sexualized fabrication, her Charge of Discrimination, and formal written demands submitted through counsel.

90.     After each assertion of her rights, the restrictions on Ms. DeVaul remained in place, her professional travel remained curtailed, and her compensation remained below that of her male comparators.

91.     The conduct did not abate after Ms. DeVaul filed her administrative charge or received her Notice of Right to Sue.

**JULY 2026: THE RUMOR, STILL
SPREADING, FROM THE BOARD'S OWN PRESIDENT**

92.     At the Board's July 6, 2026 reorganization meeting, Defendant Saunders was elected President of the Board.

93.     Upon information and belief, Defendant Saunders was elected President with the votes of his co-Defendants, Costello and Rogers.

94.     At the same reorganization meeting, Defendants Costello and Rogers were named co-vice presidents of the Board by newly elected President Saunders.

95.     Upon information and belief, the designation of two vice presidents departed from the Board's ordinary practice.

96.     The three Individual Defendants thus assumed the Board's entire elected leadership, acting in concert, in the weeks before the events described below.

97.     On July 27, 2026, following a regularly scheduled telephone meeting between the Board President and the Superintendent that Defendant Saunders failed to disconnect at its conclusion, the telephone line remained open.

98.     Dr. Heston, having heard Defendant Saunders' statements over the open line, immediately came to Ms. DeVaul's office.

99.     Ms. DeVaul personally heard Defendant Saunders' continuing remarks over the still-open telephone line.

100.    That same day, in a written message, Defendant Saunders acknowledged that he had told others that "people say" the Superintendent "is" a lesbian — the same fabricated relationship of which Ms. DeVaul has been made the other half for three and a half years.

13

101.    Defendant Saunders' written acknowledgment confirmed that, in July 2026, the rumor branding Ms. DeVaul remained in active circulation — spread by the President of the Board itself.

102.    Defendant Saunders made these statements in the immediate wake of official Board business, while serving as President of the Board.

**THE DEFENDANTS REFUSE RESPONSIBILITY AND GROW MORE EMBOLDENED**

103.    Before filing this action, Ms. DeVaul, through counsel, attempted to resolve these matters without the need for litigation.

104.    The Defendants refused to take responsibility for their conduct.

105.    Instead, the Individual Defendants grew more emboldened: they consolidated the Board's entire elected leadership among themselves, and the rumor they had refused to correct was repeated, in July 2026, by the Board's own President.

**CONTINUING VIOLATION AND ONGOING INJURY**

106.    The acts described herein are related in nature, recurred with reasonable frequency from no later than 2023 through the present, and were committed by the same three Board members.

107.    The hostile work environment described herein comprises a series of related acts that collectively constitute a single unlawful employment practice, at least one act of which occurred within the applicable charge-filing period.

108.    The August 2025 Directives, the December 16, 2025 restrictions, the cessation of Ms. DeVaul's professional travel, and the retaliatory acts described herein each occurred within the applicable charge-filing period.

109.    The disparity in Ms. DeVaul's compensation constitutes a distinct unlawful employment practice each time compensation is paid pursuant to it, as provided by 42 U.S.C. § 2000e-5(e)(3)(A).

110.    Ms. DeVaul continues to serve the district under, and subject to the authority of, the same Board, now presided over by Defendant Saunders.

111.    The confinement, the travel restrictions, the suppressed compensation, and the hostility described herein are present, ongoing, and continuing injuries that Ms. DeVaul suffers as of the filing of this Complaint and will continue to suffer absent relief.

112.    The declaratory and injunctive relief sought herein would redress those ongoing and continuing injuries.

## COUNT I — TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 — SEX DISCRIMINATION, INCLUDING DISCRIMINATION BASED ON PERCEIVED SEXUAL ORIENTATION

### (Against the Marion County Board of Education)

113.    Plaintiff incorporates by reference paragraphs 1 through 112 of this Complaint as if fully set forth herein.

114.    Title VII makes it unlawful for an employer to discriminate against an individual with respect to the compensation, terms, conditions, or privileges of employment because of such individual's sex. 42 U.S.C. § 2000e-2(a).

115.    The Board, acting through the Individual Defendants, penalized Ms. DeVaul for a close professional association with a female colleague that the same Board members tolerated, without comment, between male administrators.

116.    A man in Ms. DeVaul's position, perceived to maintain the identical association with the Superintendent, would not have been interrogated, surveilled, confined to his office, denied professional travel, or paid less than his peers.

15

117.    Sex is accordingly the but-for variable in the treatment Ms. DeVaul received.

118.    Applying the words of the statute as written, an employer who intentionally penalizes a woman for conduct or associations it tolerates in a man discriminates against her because of sex.

119.    The same textual rule applies where, as here, the employer acts on its perception of an employee's sexual orientation.

120.    The Board, acting through the Individual Defendants, intentionally discriminated against Ms. DeVaul because of her sex, including their perception that she is in a same-sex relationship.

121.    The Board's discrimination included, but was not limited to, the August 2025 Directives, the confinement of Ms. DeVaul to her office, the prohibition and eventual cessation of her professional travel, and compensation less than that paid to male employees with equal or inferior credentials.

122.    As a direct and proximate result of the Board's discrimination, Ms. DeVaul has suffered lost compensation and benefits, reputational harm, humiliation, embarrassment, emotional distress, and other damages.

### COUNT II — TITLE VII OF THE CIVIL
### RIGHTS ACT OF 1964 — HOSTILE WORK ENVIRONMENT

#### (Against the Marion County Board of Education)

123.    Plaintiff incorporates by reference paragraphs 1 through 122 of this Complaint as if fully set forth herein.

124.    Ms. DeVaul was subjected to unwelcome conduct based on her sex and perceived sexual orientation.

125.    A false rumor that a female employee's professional standing rests on a sexual relationship rather than on merit invokes a deeply rooted stereotype about women, and harassment premised on such a rumor is harassment because of sex.

126.    In *Parker*, the Fourth Circuit held that an employer's participation in the circulation of precisely such a rumor about a female employee, and its restriction of her duties because of it, states a hostile-work-environment claim; here, the rumor's principal propagators were the governing members of the employer itself. *Parker v. Reema Consulting Services, Inc.*, 915 F.3d 297 (4th Cir. 2019).

127.    That conduct was sufficiently severe or pervasive to alter the conditions of Ms. DeVaul's employment and create an abusive working environment, including, but not limited to, a three-and-a-half-year spread of the rumor through the district's schools and community, recorded interrogations of the Superintendent about Ms. DeVaul, in March 2023 and again in January 2024, a concealed ninety-eight-minute meeting at which her private life was discussed, surveillance of her social media, her physical confinement to her office, the denial of her professional travel, and the Board President's own renewed statements in July 2026.

128.    The conduct is imputable to the Board because it was committed by the Board's own members — the officials who constitute the employer's governing body — and because the Board, with full knowledge, took no corrective action.

129.    As a direct and proximate result of the hostile work environment, Ms. DeVaul has suffered damages as set forth herein.

17

## COUNT III — TITLE VII OF THE
## CIVIL RIGHTS ACT OF 1964 — RETALIATION

### (Against the Marion County Board of Education)

130.    Plaintiff incorporates by reference paragraphs 1 through 129 of this Complaint as if fully set forth herein.

131.    Ms. DeVaul engaged in protected activity, including, but not limited to, opposing the sexualized fabrication through counsel's February 9, 2023 written response, filing her Charge of Discrimination, and asserting her claims through counsel's written demands.

132.    The Board, acting through the Individual Defendants, took materially adverse actions against Ms. DeVaul, including, but not limited to, maintaining and enforcing the August 2025 Directives, further restricting her professional travel, which ceased altogether in 2026, and continuing to pay her less than her male comparators.

133.    A causal connection exists between Ms. DeVaul's protected activity and the adverse actions, as demonstrated by the temporal proximity of the conduct, the Individual Defendants' knowledge of her assertions of her rights, and the escalation of restrictions following each assertion.

134.    As a direct and proximate result of the Board's retaliation, Ms. DeVaul has suffered damages as set forth herein.

## COUNT IV — 42 U.S.C. § 1983
## — DENIAL OF EQUAL PROTECTION OF THE LAW

### (Against Defendants Costello, Rogers,
### and Saunders, and the Marion County Board of Education)

135.    Plaintiff incorporates by reference paragraphs 1 through 134 of this Complaint as if fully set forth herein.

136.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits intentional discrimination in public employment on the basis of sex, including on the basis of perceived sexual orientation.

137.    The right of a public employee to be free from intentional sex discrimination by her government employer was clearly established at all times relevant herein.

138.    Acting under color of state law, the Individual Defendants intentionally treated Ms. DeVaul differently from similarly situated male employees because of her sex, including their perception of her sexual orientation.

139.    Defendant Costello personally participated in the deprivation, including, but not limited to, by twice interrogating the Superintendent about Ms. DeVaul — in March 2023 and January 2024 — on the premise of the fabricated relationship, by participating in the concealed North Marion Meeting and the surveillance of Ms. DeVaul's social media, and by directing the August 2025 Directives.

140.    Defendant Rogers personally participated in the deprivation, including, but not limited to, by participating in the concealed North Marion Meeting and the surveillance of Ms. DeVaul's social media, and by maintaining and enforcing the restrictions on Ms. DeVaul.

141.    Defendant Saunders personally participated in the deprivation, including, but not limited to, by directing the August 2025 Directives, by directing further restrictions on Ms. DeVaul's professional travel on December 16, 2025, and by continuing to spread the fabricated rumor as recently as July 2026.

142.    The Individual Defendants' conduct was the moving force behind the deprivation of Ms. DeVaul's constitutional rights.

143. The Board is liable because the deprivation was inflicted by, and pursuant to the directives of, the Board's own members exercising the Board's final policymaking authority over personnel matters, in and through the Board's own executive sessions.

144. At all times relevant herein, the Board retained and exercised full local governing authority over the matters at issue and was not subject to any intervention that divested it of its decision-making authority.

145. The Individual Defendants acted with malice, or with reckless or callous indifference to Ms. DeVaul's federally protected rights, and punitive damages are recoverable against them in their individual capacities and are not subject to W. Va. Code § 29-12A-7.

146. As a direct and proximate result of the deprivation of her rights, Ms. DeVaul has suffered damages as set forth herein.

## COUNT V — WEST VIRGINIA HUMAN RIGHTS ACT — SEX DISCRIMINATION

### (Against the Marion County Board of Education
### and Defendants Costello, Rogers, and Saunders Individually)

147. Plaintiff incorporates by reference paragraphs 1 through 146 of this Complaint as if fully set forth herein.

148. The West Virginia Human Rights Act makes it unlawful for an employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions, or privileges of employment on the basis of sex. W. Va. Code §§ 16B-17-9(1), 16B-17-3(h).

149. West Virginia courts apply the same analytical framework used under Title VII when construing the Act's prohibition on sex discrimination.

150. Under that framework, discrimination based on an employer's perception of an employee's sexual orientation is discrimination because of sex.

151. The Board discriminated against Ms. DeVaul on the basis of her sex, including her perceived sexual orientation, as set forth in Count I.

152. The Individual Defendants aided, abetted, incited, compelled, and conspired in that discrimination within the meaning of W. Va. Code § 16B-17-9(7)(A).

153. The Individual Defendants are not immune from liability under W. Va. Code § 29-12A-5(b)(2), as their acts and omissions were undertaken with malicious purpose, in bad faith, and/or in a wanton or reckless manner, as evidenced by, among other things, their concealment of the North Marion Meeting, their own recorded acknowledgment that "we're not supposed to say stuff," and Defendant Saunders' July 27, 2026 written acknowledgment that he had repeated statements about the fabricated relationship to others.

154. As a direct and proximate result, Ms. DeVaul has suffered damages as set forth herein.

## COUNT VI — WEST VIRGINIA HUMAN RIGHTS ACT — HOSTILE WORK ENVIRONMENT

### (Against the Marion County Board of Education and Defendants Costello, Rogers, and Saunders Individually)

155. Plaintiff incorporates by reference paragraphs 1 through 154 of this Complaint as if fully set forth herein.

156. Ms. DeVaul was subjected to unwelcome, sex-based conduct sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, as set forth in Count II and construed consistently with its Title VII counterpart.

157. The conduct satisfies the factors identified in the Act's implementing regulations, W. Va. Code R. § 71-4-2.4, including, but not limited to, verbal abuse of an offensive and threatening nature, in the form of recorded interrogations and directives premised on the fabricated relationship; unwelcome and consistent sexual innuendo, in the form of three and a

21

half years of rumor, interrogation, and surveillance premised on a fabricated sexual relationship; and the frequency of the unwelcome and offensive encounters, in a course of conduct spanning 2023 through 2026.

158.    Under W. Va. Code R. § 71-4-2.4.5, evidence of the harassment suffered by other employees — including the parallel harassment of Dr. Heston — is itself proof that the harassment was pervasive or severe.

159.    The conduct is imputable to the Board, as set forth in Count II.

160.    The Individual Defendants aided, abetted, incited, compelled, and conspired in the creation and maintenance of the hostile work environment within the meaning of W. Va. Code § 16B-17-9(7)(A).

161.    The Individual Defendants are not immune from liability under W. Va. Code § 29-12A-5(b)(2), as their acts and omissions were undertaken with malicious purpose, in bad faith, and/or in a wanton or reckless manner, as evidenced by, among other things, their concealment of the North Marion Meeting, their own recorded acknowledgment that "we're not supposed to say stuff," and Defendant Saunders' July 27, 2026 written acknowledgment that he had repeated statements about the fabricated relationship to others.

162.    As a direct and proximate result, Ms. DeVaul has suffered damages as set forth herein.

### COUNT VII — WEST VIRGINIA HUMAN RIGHTS ACT — RETALIATION

**(Against the Marion County Board of Education
and Defendants Costello, Rogers, and Saunders Individually)**

163.    Plaintiff incorporates by reference paragraphs 1 through 162 of this Complaint as if fully set forth herein.

164.    The West Virginia Human Rights Act makes it unlawful to retaliate against a person for opposing practices made unlawful by the Act or for filing a complaint under the Act. W. Va. Code § 16B-17-9(7)(C).

165.    Ms. DeVaul engaged in protected activity, and the Board, acting through the Individual Defendants, took materially adverse actions against her, as set forth in Count III.

166.    The Individual Defendants aided, abetted, incited, compelled, and conspired in that retaliation within the meaning of W. Va. Code § 16B-17-9(7)(A).

167.    The Individual Defendants are not immune from liability under W. Va. Code § 29-12A-5(b)(2), as their acts and omissions were undertaken with malicious purpose, in bad faith, and/or in a wanton or reckless manner, as evidenced by, among other things, their concealment of the North Marion Meeting, their own recorded acknowledgment that "we're not supposed to say stuff," and Defendant Saunders' July 27, 2026 written acknowledgment that he had repeated statements about the fabricated relationship to others.

168.    As a direct and proximate result, Ms. DeVaul has suffered damages as set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Kristin DeVaul, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants and grant the following relief:

a.    A declaratory judgment that Defendants' conduct violated Title VII, the Fourteenth Amendment, and the West Virginia Human Rights Act;

b.    Permanent injunctive relief enjoining Defendants from further discrimination, harassment, and retaliation, rescinding the August 2025 Directives and all restrictions on Ms. DeVaul's movement and professional travel, equalizing her compensation with that of similarly

23

situated male employees, and requiring the Board to adopt and enforce appropriate anti-discrimination and anti-retaliation measures;

c.      All equitable make-whole relief, including back pay and lost benefits, the difference between Ms. DeVaul's compensation and that of her male comparators, diminished retirement contributions and benefits attributable to her suppressed compensation, the restoration of employment terms commensurate with those she would have received absent discrimination, and front pay as appropriate;

d.      Compensatory damages for emotional distress, humiliation, embarrassment, reputational harm, and loss of enjoyment of life, in an amount to be determined at trial, without statutory cap under 42 U.S.C. § 1983 and the West Virginia Human Rights Act, and subject to the applicable statutory limit under Title VII;

e.      Punitive damages against Defendants Costello, Rogers, and Saunders in their individual capacities under 42 U.S.C. § 1983 and the West Virginia Human Rights Act;

f.      Reasonable attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. §§ 1988 and 2000e-5(k) and W. Va. Code § 16B-17-13;

g.      Pre-judgment and post-judgment interest as permitted by law; and

h.      Such other and further relief as this Honorable Court deems just and proper.

**THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

Kristin DeVaul,
By Counsel,


/s/ Ryan J. Umina, Esq.
Ryan J. Umina, Esq. (W. Va. Bar No. 13056)
UMINA LEGAL, PLLC
133 Greenbag Road
Morgantown, WV 26501
Phone: (304) 838-8024
ryan@uminalegal.com


24