**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**KRISTIN DEVAUL,**

**Plaintiff,**

**v.**

**Civil Action No. 1:26-cv-93-TSK**
**Judge Thomas S. Kleeh**

**THE MARION COUNTY BOARD OF EDUCATION;**

**DONNA COSTELLO, in her individual and official capacity as a member of the Marion County Board of Education;**

**KEVIN ROGERS, in his individual and official capacity as a member of the Marion County Board of Education; and**

**JAMES SAUNDERS, in his individual and official capacity as a member of the Marion County Board of Education,**

**Defendants.**

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT MARION COUNTY BOARD OF EDUCATION'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, Kristin DeVaul, by counsel, Ryan J. Umina, Esq., and the law firm of Umina Legal, PLLC, and for her Response in Opposition to the Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendant Marion County Board of Education (the "Board") (ECF No. 9) (the "Motion" or "Mot."), states as follows:

## I. INTRODUCTION

The Board's Motion turns on a euphemism. It describes what happened to Kristin DeVaul as the Board wanting her "to actually be at work." Mot. at 3, 7. The First Amended Complaint ("FAC"), ECF No. 3, alleges something else. A human-resources administrator with eighteen

years of service was ordered, in an executive session held in her absence and without notice, not to leave her office, not to visit the schools she was hired to serve, and not to travel to professional meetings with the Superintendent. FAC ¶¶ 8–9, 105–106. The Board's then-President, George C. Boyles, was in the room. He swears that, in his observation, the restrictions arose from a rumored relationship between Ms. DeVaul and the Superintendent and not from any concern with the job performance of either woman, and that he knows of no occasion on which any Board member directed a male employee to remain in his office. *Id.* ¶¶ 111, 123, 129, 132 & Ex. 2.

The Board says none of this matters because Ms. DeVaul was not fired. Mot. at 2–3. That is not the law. Title VII reaches any discrimination that leaves an employee worse off in the terms or conditions of her employment. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024). Confinement to an office is a condition of employment. So is pay, and the FAC alleges that Ms. DeVaul is paid less than men with equal or lesser credentials. FAC ¶¶ 134–136.

The Board's justification does not help it. It argues that a rumor that the Superintendent "may be personally biased toward a subordinate because of a potential sexual relationship is squarely within the purview of the Board member's concern." Mot. at 5. The FAC alleges that one of those Board members, asked on tape whether male administrators who stayed overnight together were sleeping together, answered: "Well, that's not my business." FAC ¶¶ 60–61. A concern that reaches two women and stops at men is a concern about sex. The Motion should be denied.

## II. RELEVANT ALLEGATIONS

Ms. DeVaul has served the Marion County school system for eighteen years and is the County's Administrative Assistant of Human Resources. FAC ¶¶ 8–9. She was selected for that

position by a hiring committee on the merits. *Id.* ¶¶ 55–56. The Board holds final authority over the employment, compensation, and working conditions of its personnel. *Id.* ¶¶ 13–14. Defendants Costello, Rogers, and Saunders (the "Individual Defendants") are members of the Board. *Id.* ¶¶ 15, 18, 20.

In January 2023, an assistant principal facing discipline emailed the Board a fabricated accusation that sexualized the professional relationship between Ms. DeVaul and Superintendent Donna Heston. *Id.* ¶¶ 39–41. Ms. DeVaul's counsel responded in writing on February 9, 2023, with a copy to the Board members. *Id.* ¶ 42. No Individual Defendant made any inquiry of Ms. DeVaul or repudiated the fabrication. *Id.* ¶ 43. They adopted its premise instead. *Id.* ¶¶ 26, 44.

In recorded conversations in March 2023 and January 2024, Defendant Costello pressed the Superintendent about the rumored relationship, announced that the subject was "not a debate," and tied Ms. DeVaul's appointment to it: "I think that's when shit hit the fan." *Id.* ¶¶ 45, 50–53. When the Superintendent confronted her with male administrators who socialized, traveled, and stayed overnight together without suspicion, and Defendant Costello was asked whether those men were sleeping together, she answered, "Well, that's not my business," and conceded, "I know it's a good old boy network and it still exists." *Id.* ¶¶ 60–62. In May 2024, Defendant Costello raised photographs from a recreational fishing trip before the Board; they were characterized as depicting the Superintendent's "lifestyle," and the discussion progressed to an assertion that the Superintendent was having an affair with Ms. DeVaul. *Id.* ¶¶ 65–66, 69, 71–72, 77. It was Defendants Costello, Rogers, and Saunders who treated the photographs as indicative of a purported same-sex relationship between the two women. *Id.* ¶ 78. In or about July 2025, Defendants Costello and Rogers met privately with an assistant principal, in a meeting concealed from the Superintendent and from Ms. DeVaul, at which Ms. DeVaul's personal life

and social-media activity were discussed and Defendant Costello acknowledged, "We're not supposed to say stuff." *Id.* ¶¶ 83–89.

In August 2025, during an executive session at which all Board members and the Superintendent were present, Defendants Saunders and Costello directed that Ms. DeVaul could not leave her office during the workday, could not travel with the Superintendent to professional meetings, and could not visit the schools she serves (the "August 2025 Directives"). *Id.* ¶ 105. The Superintendent objected that the directive was discriminatory. *Id.* ¶ 107. It remained in effect. *Id.* ¶ 109. On December 16, 2025, Defendant Saunders questioned in executive session why Ms. DeVaul had attended a professional conference in Wheeling; her attendance was portrayed, in substance, as running off with her girlfriend. *Id.* ¶¶ 119–122. In 2026, as a result, Ms. DeVaul has not traveled professionally at all. *Id.* ¶ 125. No comparable directive was ever issued to any male employee, and male administrators routinely traveled with Board approval and attended conferences together. *Id.* ¶¶ 108, 126–130. A sitting Board member wrote that Defendant Saunders "does not seem to care that male administrators attend meetings together." *Id.* ¶ 131. The confinement directive has never been rescinded. *Id.* ¶ 178.

Ms. DeVaul holds Position Code 104. *Id.* ¶ 133. A male employee who holds a different code, with a lower credential and fewer years of experience, is paid materially more. *Id.* ¶ 135. A second male employee with the identical code and credential, in the same office, is paid more still; he has never been confined to his office or questioned about his relationships, including his public socializing with Defendant Saunders. *Id.* ¶¶ 136–138.

Ms. DeVaul asserted her rights through counsel's 2023 letter, a Charge of Discrimination, and written demands. *Id.* ¶¶ 3, 149. The restrictions stayed in place after each. *Id.* ¶¶ 150–151. The Board's then-President observed that, after the Board learned that Ms.

DeVaul and the Superintendent were asserting legal claims, the hostility of Defendants Costello, Rogers, and Saunders toward the Superintendent increased, and that their conduct during that period was retaliatory. *Id.* ¶¶ 152–153, 213. In July 2026, the Individual Defendants assumed the Board's entire elected leadership, and President Saunders acknowledged in a written message that he had told others that "people say" the Superintendent "is" a lesbian. *Id.* ¶¶ 159–165, 169–170.

## III. STANDARD OF REVIEW

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. In deciding it, the Court "must accept as true all of the factual allegations contained in the complaint." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir. 2007) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), but a complaint survives when it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Three further rules apply here. First, an employment discrimination plaintiff need not plead a prima facie case; she must allege facts that make discrimination plausible. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002); *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584–85 (4th Cir. 2015). Second, the Court draws all reasonable inferences in the plaintiff's favor, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th

Cir. 2011), and whether a comparator is similarly situated is an evidentiary question that generally should not be resolved on a motion to dismiss. *Woods v. City of Greensboro*, 855 F.3d 639, 650–51 (4th Cir. 2017). Third, the Court considers the complaint and its exhibits, *see* Fed. R. Civ. P. 10(c), not a defendant's competing account of the facts. *See* Fed. R. Civ. P. 12(d).

## IV. ARGUMENT

### A. The Motion Depends on Facts Outside the FAC and Reads the FAC Against the Plaintiff.

Several of the Board's arguments rest on assertions found nowhere in the pleading: that Ms. DeVaul "only recently modified her social media account to completely delete all posts," that the profiles were public "at the inception of this case," and that the Board maintains a particular harassment policy. Mot. at 4–5. None of that is in the FAC or its exhibits. These are counsel's unsworn factual contentions, and they are not properly considered on a Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(d).

The Motion also recasts what the FAC does say. It describes a rumor "spread by the general public." Mot. at 6. The FAC alleges that three of the Board's members "propelled and advanced the rumor rather than taking any action to correct it." FAC ¶ 103. And the FAC does not allege that the Board wanted Ms. DeVaul "at work." It alleges that she was confined to her office and cut off from "the schools and personnel her position exists to serve," FAC ¶ 110, and that the Board's then-President considered the directive improper. *Id.* ¶ 114. At this stage, the FAC's account controls. *Kolon*, 637 F.3d at 440.

### B. Count I States a Claim for Sex Discrimination Under Title VII.

#### 1. The FAC alleges harm to the terms and conditions of Ms. DeVaul's employment.

The Board argues that Ms. DeVaul "was not fired," that her pay was "not lessened," and that her "terms and conditions of employment remain the same." Mot. at 3. The Supreme Court has rejected that measure. A Title VII plaintiff need show only "some harm respecting an identifiable term or condition of employment"; the harm need not be "significant." *See Muldrow*, 601 U.S. at 354–55. The plaintiff in *Muldrow* kept her rank and her pay. *Id.* at 351.

The FAC clears that bar. Where an employee works, whether she may leave her office, and whether she may do the fieldwork and attend the professional meetings her job entails are conditions of employment. The FAC alleges that Ms. DeVaul lost all three, and that she has not traveled professionally at all in 2026. FAC ¶¶ 105, 110, 125. It also alleges unequal pay, *id.* ¶¶ 134–136, a harm to "compensation," the first subject the statute lists. 42 U.S.C. § 2000e-2(a)(1).

#### 2. The FAC plausibly alleges that the Board acted because of sex.

The FAC alleges that the Board penalized Ms. DeVaul for a professional association with a female colleague that the same Board members tolerated, without comment, between male administrators. FAC ¶¶ 191–192. It does not leave that to inference. The Board's then-President swears that male administrators regularly traveled to meetings and conferences together, that he knows of no occasion on which any Board member took issue with it or directed a male employee to remain in his office, and that the scrutiny applied to Ms. DeVaul and the Superintendent traveling together "was applied to no one else." *Id.* ¶¶ 127–130. Defendant Costello, asked on tape whether male administrators who stayed overnight together were sleeping together, said it was "not my business." *Id.* ¶¶ 60–61. Defendant Saunders, who directed

the confinement, socializes publicly with the male employee who holds Ms. DeVaul's identical position code. *Id.* ¶¶ 136, 138.

The FAC also alleges that the treatment rested on a stereotype: that a woman's professional standing is explained by a sexual relationship rather than by her work. *Id.* ¶¶ 53–54, 196. Discrimination premised on that stereotype is discrimination because of sex. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250–51 (1989) (plurality opinion); *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 303 (4th Cir. 2019). And under Title VII, an employer that restricts a woman because it believes she is in a relationship with another woman acts because of sex. *See Bostock v. Clayton Cnty.*, 590 U.S. 644, 660 (2020). The Board cites no authority to the contrary. It argues that the rumored relationship was within its members' "concern." Mot. at 5. The FAC alleges that the concern stopped at women. FAC ¶¶ 60–61, 127–130.

**3. The Board's attack on the pay comparators raises questions of fact.**

The Board argues that one male comparator holds a different position code and that Ms. DeVaul acknowledges the gap with the other "could be partially justified" by experience. Mot. at 3–4. Whether employees are similarly situated is an evidentiary question. *See Woods*, 855 F.3d at 650–51. And the Board skips what the FAC alleges. Male Employee No. 1 has a *lower* credential and *fewer* years of experience than Ms. DeVaul and is paid materially more. FAC ¶ 135. As to Male Employee No. 2, the FAC acknowledges that "a portion" of the gap reflects seniority, *id.* ¶ 137; it alleges that the Board's disparate treatment of the two Code-104 administrators is nonetheless "stark," and that sex is the differentiating factor. *Id.* ¶¶ 137, 139. Candor about part of a disparity is not a concession of all of it.

#### 4. The "public social media" argument misses the allegation.

The Board says looking at a public profile is not "surveillance." Mot. at 4. The FAC does not allege hacking. It alleges that Board members discussed the social-media activity of two women, and only two women, in connection with a rumored sexual relationship, in a concealed meeting with a subordinate. FAC ¶¶ 83–88. The point is the selectivity, not the privacy setting.

### C. Count II States a Hostile Work Environment Claim.

A hostile work environment claim requires unwelcome conduct, based on sex, that is sufficiently severe or pervasive to alter the conditions of employment, and that is imputable to the employer. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc). *Parker* answers the Board's principal arguments.

*The Board did not have to start the rumor.* The Board says the rumor was "neither created nor controlled by" it, and that "[t]o the extent that board members discussed the subject rumor, the same is not actionable." Mot. at 5. In *Parker*, the rumor was started by a co-worker. The complaint stated a claim against the employer because, as alleged, the highest-ranking manager at the plaintiff's facility took part in spreading the rumor and the employer acted on it. 915 F.3d at 300–01. The FAC alleges that three of the Board's members "propelled and advanced the rumor"; that one of them interrogated the Superintendent about it twice and presented photographs to the Board; that the three treated the photographs as indicative of a same-sex relationship; that two of them discussed Ms. DeVaul's personal life with a subordinate in a concealed meeting; and that the Board's President repeated the rumor in July 2026. FAC ¶¶ 45–78, 83–89, 103, 169–170, 222.

*The harassment was because of sex.* A false rumor that a woman owes her position to a sexual relationship invokes "a deeply rooted perception" about women, and harassment premised

on it is harassment because of sex. *Parker*, 915 F.3d at 303. The FAC pleads that stereotype, FAC ¶¶ 53–54, 204, and adds sworn testimony that male administrators regularly traveled to meetings and conferences together and that no Board member took issue with it. *Id.* ¶¶ 127–130.

*Severity or pervasiveness is adequately alleged.* The Board notes that no one slammed a door on Ms. DeVaul. Mot. at 6. *Parker* describes the facts of one case; it does not set a floor. The question is whether the environment was abusive in light of "all the circumstances," including whether the conduct was humiliating and whether it interfered with work. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The FAC alleges three and a half years of it: recorded interrogations of her superior about her private life; photographs raised before the Board and treated as indicative of a same-sex relationship between her and the Superintendent; a concealed meeting about her personal life; scrutiny of her social media; confinement to her office; the loss of all professional travel; a conference portrayed as running off with her girlfriend; a rumor she has been made to answer for among her colleagues; and its repetition by the Board's President in July 2026. FAC ¶¶ 64–65, 78, 102, 125, 206. Conduct that confines an employee to her office and strips her of core job functions because of a sexual rumor interferes with her work by definition.

*The conduct is imputable to the Board.* The Board makes no separate argument on this element. The closest it comes is its statement that the rumor was "neither created nor controlled by" it, Mot. at 5, which is addressed above. The conduct was committed by the Board's members, including in the Board's executive sessions, and the Board took no corrective action. FAC ¶¶ 105, 119, 207. There was no one higher to whom Ms. DeVaul could complain.

**D. Count III States a Retaliation Claim.**

The Board argues that Ms. DeVaul suffered no adverse action because she "is still employed," and cites *Muldrow* for the proposition that "injury must be alleged." Mot. at 7. *Muldrow* is a discrimination case; it lowered the harm threshold, and the passage the Board cites explains that retaliation claims are governed by a different standard. 601 U.S. at 357–58. That standard asks whether the employer's action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). Keeping an employee confined to her office, ending her professional travel, and continuing to spread a sexual rumor about her would dissuade a reasonable worker.

On causation, the Board measures from a single event, counsel's February 2023 letter, to the August 2025 Directives, and declares the gap "years." Mot. at 7. The FAC alleges more protected activity than that: a Charge of Discrimination, on which a Notice of Right to Sue issued May 5, 2026, and written demands through counsel. FAC ¶¶ 3–4, 149, 210. And it alleges what followed: the restrictions were maintained and enforced after each assertion of her rights; her professional travel ceased altogether in 2026; central-office salary information was demanded and, on information and belief, disseminated; and the Board's President repeated the rumor in July 2026. *Id.* ¶¶ 125, 150–151, 154–158, 169–170, 211. The Motion does not mention the Charge or any of the FAC's allegations about 2026.

Timing is not the only proof of causation. "[E]vidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation." *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). The FAC alleges, on the sworn account of the Board's then-President, that, after the Board learned that Ms. DeVaul and the Superintendent

were asserting legal claims, the hostility of Defendants Costello, Rogers, and Saunders toward the Superintendent increased, and that their conduct during that period was retaliatory. FAC ¶¶ 152–153, 213. The Board's authority recognizes that a retaliatory hostile work environment is actionable, and it vacated the dismissal of such a claim. *Laurent-Workman v. Wormuth*, 54 F.4th 201, 217–19 (4th Cir. 2022). Finally, the Board's retaliation argument states that Ms. DeVaul "fails to state a claim on the hostile work environment claim because Plaintiff has not suffered an adverse action." Mot. at 6–7. If that sentence is directed at Count II, it fails. A hostile work environment claim requires no discrete adverse action. *Harris*, 510 U.S. at 21–22.

**E. Count IV States a Claim Against the Board Under § 1983.**

The Board argues that Ms. DeVaul has not alleged a "persistent and widespread practice." Mot. at 8. That is one route to municipal liability. It is not the one the FAC pleads. A municipal policy may arise through an express policy, through "the decisions of a person with final policymaking authority," through an omission manifesting deliberate indifference, or through a widespread practice. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). Liability attaches to acts that "may fairly be said to represent official policy," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), including "a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). State law identifies the final policymaker. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion).

In West Virginia, each county school district is "under the supervision and control of a county board of education." W. Va. Code § 18-5-1; *see* ECF No. 10-1 at 8 (co-defendants stating that county schools "are governed and controlled by elected county Boards of Education, including personnel"). The FAC alleges that the Board holds final policymaking authority over

Ms. DeVaul's working conditions, and that the deprivation was inflicted by the Board's members, in and through the Board's executive sessions, with every member present. FAC ¶¶ 13–14, 105, 226. That is the decision of a final policymaker. If the Board's position is that a directive given in its executive session was not really its act, the answer is the same. The full Board was present when the directive was given and when the Superintendent objected that it was discriminatory, and the directive was left in force. *Id.* ¶¶ 105, 107, 109, 115–116, 178. A school board that ratifies a challenged decision makes that decision its own. *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 533–34 (4th Cir. 2022). How the Board in fact exercises its authority is a question for discovery, not for a motion to dismiss.

The two decisions the Board cites on this point involved misconduct by non-policymakers, and in both the Fourth Circuit allowed the municipal claim to proceed. *Owens v. Balt. City State's Att'ys Office*, 767 F.3d 379, 402–04 (4th Cir. 2014) (police officers; vacating dismissal of *Monell* claim); *Ricketts v. Wake Cnty. Pub. Sch. Sys.*, 125 F.4th 507, 526–27 (4th Cir. 2025) (student harassment; allegations against board of education sufficient).

The Board's equal protection argument is that Ms. DeVaul is not similarly situated to the male comparators. Mot. at 8–9. It fails for the reasons given in Part IV.B. The decision the Board cites, *Roberts v. Engelke*, 180 F.4th 634, 648–49 (4th Cir. 2026), involved a prisoner's request for religious dietary accommodations, not public employment. And the Board's assertion that it "has not taken any action against Plaintiff that could be deemed oppressive," Mot. at 8, disputes the FAC. It does not test it. The Equal Protection Clause gives a public employee the right to be free from intentional sex discrimination by her employer. *Wilcox v. Lyons*, 970 F.3d 452, 458 (4th Cir. 2020); *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994). The FAC alleges that Ms. DeVaul was confined, restricted, and scrutinized when similarly situated men were not, and that

the difference was intentional. FAC ¶¶ 108, 127–130, 138, 221. In May 2024, when the photographs were characterized as depicting the Superintendent's "lifestyle" and it was said, in words or substance, that "we need to get rid of her," Mr. Boyles told the other Board members that the Board "could not fire Dr. Heston for that reason, because she would be in a protected class"; the Individual Defendants imposed the restrictions on Ms. DeVaul on the basis of the same purported relationship anyway. *Id.* ¶¶ 71–72, 75–76, 220. The Motion is filed by the Board alone; the individual-capacity claims in Count IV are not before the Court on it.

### F. Counts V, VI, and VII State Claims Under the West Virginia Human Rights Act.

The Board's argument against the state-law counts is that "sexual orientation is not a protected class" and that Ms. DeVaul therefore "is not deemed a member of a 'protective class.'" Mot. at 9. Ms. DeVaul is a woman. Counts V and VI allege discrimination and harassment on the basis of her sex, and Count VII alleges retaliation for asserting her rights. FAC ¶¶ 234, 239, 248. The Act forbids discrimination because of sex "with respect to compensation, hire, tenure, terms, conditions, or privileges of employment." W. Va. Code §§ 16B-17-3(h), 16B-17-9(1). A woman who alleges that she was confined, restricted, and underpaid when similarly situated men were not has pleaded discrimination in compensation and conditions of employment because of sex.

The Board relies on *Jones v. Town of Lumberport*, No. 23-ICA-540, 2024 WL 5201657, 2024 W. Va. App. LEXIS 405 (W. Va. Ct. App. Dec. 23, 2024) (memorandum decision). Mot. at 9. *Jones* held, over a dissent, that the Act's prohibition of discrimination because of "sex" "does not prohibit discrimination based on 'sexual orientation.'" 2024 W. Va. App. LEXIS 405, at *9. As the majority framed the case, each of the plaintiff's claims stemmed from allegations that he was discriminated against "because of his sexual orientation," *id.* at *3; as the dissent observed, gender stereotyping was not raised by the parties and the majority did not address it. *See id.* at

*37 (Scarr, C.J., dissenting). *Jones* therefore says nothing about a woman who alleges that she was treated worse than men for the same conduct, on a stereotype about women. That claim does not ask the Court to add a word to the statute. It applies the word that is there.

Nor does *Jones* bind this Court. It is a memorandum decision of a divided intermediate court. Even memorandum decisions of the Supreme Court of Appeals carry precedential value that is "necessarily more limited." Syl. Pt. 5, *State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014). This Court's task is to predict how the Supreme Court of Appeals would rule. In that inquiry the decisions of a state's intermediate appellate court "constitute the next best indicia of what state law is," but they "may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise." *Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002) (internal quotation marks omitted). The Supreme Court of Appeals has long construed the Act with the guidance of Title VII precedent, absent statutory variations or other compelling reasons for a different result, *Hanlon v. Chambers*, 195 W. Va. 99, 112, 464 S.E.2d 741, 754 (1995); *Barefoot v. Sundale Nursing Home*, 193 W. Va. 475, 482, 457 S.E.2d 152, 159 (1995), and under that court's test the third element of a prima facie case is that, "[b]ut for the plaintiff's protected status, the adverse decision would not have been made." Syl. Pt. 3, in part, *Conaway v. E. Associated Coal Corp.*, 178 W. Va. 164, 358 S.E.2d 423 (1986). A woman penalized for an association the same officials ignored between men pleads exactly that.

The Board's other citations for its statement that West Virginia courts "have declined to follow" *Bostock*, Mot. at 9, predate *Bostock*. *Hanlon* was decided in 1995 and recognized a hostile work environment claim under the Act. *Stone v. St. Joseph's Hospital of Parkersburg*, 208 W. Va. 91, 538 S.E.2d 389 (2000), is a disability case. To the extent the FAC also pleads

that discrimination based on perceived sexual orientation is discrimination because of sex under the Act, FAC ¶ 233, that is an alternative theory the Court need not resolve to deny the Motion. The Board does not address the FAC's allegations that the Individual Defendants aided and abetted the discrimination or its allegations defeating statutory immunity. *Id.* ¶¶ 235–236, 243–244, 249–250. To the extent the Board means its Title VII arguments to reach the parallel state-law counts, Mot. at 4, 9, they fail for the reasons given in Parts IV.B through IV.D.

**G. The Board's Objection to Service Is Moot and Lacks Merit.**

The Board argues that service was insufficient because the summons was delivered to an executive secretary rather than to "the president or any commissioner thereof" under W. Va. Code § 56-3-13(c). Mot. at 9–10. The objection is moot, and it is difficult to square with the record.

*The objection is moot.* Without conceding any defect, Plaintiff requested an additional summons directed to the Board on October 5, 2026 (ECF No. 11), and the Board was served again that same day, this time on its President, James Saunders. ECF No. 13; FAC ¶ 159. That is the service the Board says the statute requires. It was completed within the ninety days Rule 4(m) allows, a period that has not yet expired. Whatever the result in the unpublished decision the Board cites, Mot. at 10, the Board here has been served in the manner it demands. Nothing remains of the objection.

*The objection was never substantial.* The Board's position is that it was not properly brought before the Court because its papers were handed to a secretary and not to its President or one of its members. Its President is a Defendant in this action. Defendant Saunders is sued in his official capacity as a member of the Board as well as individually, and he waived service. Two more of the Board's five members, Defendants Costello and Rogers, are likewise sued in their

official capacities and were served with process, as the waiver and returns of service on file reflect. FAC ¶¶ 15, 18, 20, 156. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). A majority of the Board's members, including its President, had thus been served or had waived service before the Board moved. The Board then appeared through counsel and briefed the merits. It does not say that it lacked notice of this action or that the manner of service prejudiced it in any way. When process "gives the defendant actual notice of the pendency of the action, the rules, in general, are entitled to a liberal construction," though "plain requirements for the means of effecting service of process may not be ignored." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984); *see Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963). Plaintiff has not ignored them. The Board has now been served on its President.

*Dismissal was never the remedy.* The Board moved on September 24, 2026, with more than a month of the Rule 4(m) period remaining. A defendant should not obtain dismissal for a claimed defect that the Rules still allow the plaintiff time to cure. And even where service is defective, a court "should treat the motion in the alternative, as one to quash the service of process," and retain the case pending effective service. *Vorhees v. Fischer & Krecke*, 697 F.2d 574, 576 (4th Cir. 1983) (quoting *Bailey v. Boilermakers Local 667*, 480 F. Supp. 274, 278 (N.D. W. Va. 1979)). Rule 4(m) requires an extension of time for good cause and permits one without it. *Gelin v. Shuman*, 35 F.4th 212, 220 (4th Cir. 2022). A dismissal for want of service is, by rule, "without prejudice." Fed. R. Civ. P. 4(m). The dismissal "with prejudice" the Board requests, Mot. at 10, was never available on this ground.

**H. The Board Has No Qualified Immunity, and Dismissal With Prejudice Would Be Improper.**

The Motion asserts that the Board "is entitled to qualified immunity." Mot. at 10. It never argues the point, and the point is foreclosed. A local governing body "may not assert the good faith of its officers or agents as a defense to liability under § 1983." *Owen v. City of Independence*, 445 U.S. 622, 638 (1980). Qualified immunity belongs to individuals sued in their personal capacities. The Board is the only movant here.

The Motion also recites Rule 12(b)(7), Mot. at 3, but it identifies no absent party and makes no argument under Rule 19. Nothing is presented for decision on that ground.

Finally, the Board asks for dismissal with prejudice without saying why. Leave to amend is freely given absent undue delay, bad faith, futility, or prejudice. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Board identifies none of those. The FAC is sufficient as pleaded. But if the Court were to find any count deficient, the proper course would be leave to amend.

## V. CONCLUSION

WHEREFORE, Plaintiff, Kristin DeVaul, respectfully requests that this Honorable Court deny Defendant Marion County Board of Education's Motion to Dismiss Plaintiff's First Amended Complaint in its entirety; in the alternative, should the Court find service of process deficient, quash service and allow Plaintiff to complete service within the time permitted by Rule 4(m); in the further alternative, should the Court find any count deficiently pleaded, grant Plaintiff leave to amend; and grant such other and further relief as the Court deems just and proper.

KRISTIN DEVAUL,
By Counsel,

/s/ Ryan J. Umina
Ryan J. Umina, Esq. (W. Va. Bar No. 13056)
UMINA LEGAL, PLLC
133 Greenbag Road
Morgantown, WV 26501
Phone: (304) 838-8024
ryan@uminalegal.com
*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**KRISTIN DEVAUL,**

**Plaintiff,**

**v.**

**Civil Action No. 1:26-cv-93-TSK**
**Judge Thomas S. Kleeh**

**THE MARION COUNTY BOARD OF EDUCATION;**

**DONNA COSTELLO, in her individual and official capacity as a member of the Marion County Board of Education;**

**KEVIN ROGERS, in his individual and official capacity as a member of the Marion County Board of Education; and**

**JAMES SAUNDERS, in his individual and official capacity as a member of the Marion County Board of Education,**

**Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of October, 2026, I electronically filed the foregoing **Plaintiff's Response in Opposition to Defendant Marion County Board of Education's Motion to Dismiss Plaintiff's First Amended Complaint** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Thomas E. Buck, Esq.
Mark A. Kepple, Esq.
Isabella M. Ortiz, Esq.
Bailey & Wyant, PLLC
1219 Chapline Street
Wheeling, WV 26003
tbuck@baileywyant.com
mkepple@baileywyant.com
iortiz@baileywyant.com
*Counsel for Defendant Marion County Board of Education*

Heather M. Noel, Esq.
J. Robert Russell, Esq.
Shuman McCuskey Slicer PLLC
300 Wedgewood Drive, Suite 110
Morgantown, WV 26505
hnoel@shumanlaw.com
rrussell@shumanlaw.com
*Counsel for Defendants Donna Costello and Kevin Rogers*

I further certify that on the same date I served a true copy of the foregoing by electronic mail and by first-class United States Mail, postage prepaid, upon the following counsel, who has not yet appeared on the CM/ECF docket:

Keith C. Gamble, Esq.
Litchfield Cavo LLP
8 Capitol Street, Floor 4
Charleston, WV 25301
gamble@litchfieldcavo.com
*Counsel for Defendant James Saunders*

/s/ Ryan J. Umina
Ryan J. Umina, Esq. (W. Va. Bar No. 13056)
UMINA LEGAL, PLLC
133 Greenbag Road
Morgantown, WV 26501
Phone: (304) 838-8024
ryan@uminalegal.com